PEOPLE *v.* MILLER.

1. HOMICIDE—CAUSE OF DEATH—EVIDENCE—QUESTION FOR JURY.
   In a prosecution for manslaughter on the theory that deceased died from drinking wood alcohol contained in whisky sold by defendant, evidence *held*, sufficient to take the question of the cause of death to the jury.[1]

2. SAME — ADMISSION OF CHEMICAL ANALYSIS OF LIQUOR NOT SHOWN TO HAVE COME FROM DEFENDANT PREJUDICIAL.
   It was prejudicial error for the trial court to refuse to exclude from the consideration of the jury the chemical analysis of liquor, some of which was not shown to have been obtained from the defendant.[2]

Exceptions before judgment from Muskegon; Vanderwerp (John), J.     Submitted April 16, 1925. (Docket No. 133.)     Decided May 14, 1925.

William Miller was convicted of manslaughter. Reversed.

*Macdonald & Macdonald,* for appellant.

*Andrew B. Dougherty,* Attorney General, *R. Glen Dunn,* Prosecuting Attorney, and *Harry W. Jackson,* Special Prosecutor, for the people.

McDONALD, C. J.     The defendant was convicted of manslaughter and has brought the case here on exceptions before sentence.     It is the theory of the people that on the 21st day of December, 1923, at the township of Montague, in the county of Muskegon, the defendant sold two bottles of moonshine whisky to one Fred Dahlman; that some of the whisky contained wood alcohol and other poisonous ingredients;

---

[1]Homicide, 30 C. J. § 571; [2]Criminal Law, 17 C. J. § 3662; Homicide, 30 C. J. § 448.

that Dahlman gave the bottle containing the wood alcohol to Fred Marquardt, who drank of it with the result that he died from its effects within an hour thereafter; that defendant in selling the liquor knew that he was doing an unlawful act; that he knew the liquor contained wood alcohol and that it was of greater potency and possessed poisonous ingredients not contained in ordinary whisky, and was dangerous for use as a beverage.

On the trial the defendant was a witness in his own behalf and gave evidence in complete denial of the claim that he had sold or furnished liquor of any kind to Dahlman. He here contends that the judgment of conviction should be reversed for the following reasons:

1. That the court erred in refusing to direct a verdict of acquittal. A directed verdict was requested by the defendant on the ground that there was no competent evidence tending to show that the deceased came to his death as the result of drinking whisky containing wood alcohol, or other poisonous ingredients. There is evidence that Dahlman bought two pint bottles of whisky from the defendant. One of them is referred to as the brown flask. It is this flask that the people claim contained wood alcohol. Dahlman gave the flask to the deceased. He drank the contents and about an hour later was found dead with the flask nearly empty lying by his side. Dr. Jensen of Montague arrived within five or ten minutes after his death. He examined the body and noted the surroundings. He says that he is familiar with the odor of wood alcohol and could distinguish it from the odor of ordinary moonshine. There was the odor of wood alcohol about the body and he got the same odor from the brown flask. It was his judgment that death had been produced by wood alcohol poisoning. An autopsy was held and no other cause of death was apparent. Dr. Herbert W. Emerson of

the University of Michigan made a chemical analysis of the stomach and various other internal organs of the deceased.    He testified that they contained wood alcohol, ethyl alcohol and amyl alcohol, or fusel oil. It appeared from the evidence that Dahlman had purchased moonshine whisky from other parties and had some of it with him at the time he got the brown flask from the defendant; that he treated various other men with this other whisky, and that they suffered no evil effects therefrom.    It definitely appears that the contents of the brown flask were drunk by the deceased; that he was a strong man in good health; and that he died within an hour of the time that he imbibed this liquor.    These facts and the fact that the autopsy disclosed no other cause of death, together with the opinion of Dr. Jensen, and the chemical analysis of the stomach and other organs, by Dr. Emerson, furnished sufficient evidence to take the question of the cause of death to the jury.

2. Error is assigned on the refusal of the court to exclude from the consideration of the jury the chemical analysis of the liquor by Dr. Emerson.    The question was raised by motion and by request to charge. Three flasks each containing a small quantity of liquor were sent to Dr. Emerson for analysis.    One of these was the brown flask in which there was about a teaspoonful of liquid; the other two contained a less amount.    Dr. Emerson poured the contents of the three bottles into a glass and from his analysis of the compound testified that it contained wood alcohol, ethyl alcohol and amyl alcohol, or fusel oil.    The brown flask was definitely identified as having come from the defendant, but there is nothing in the record to connect him with the other bottles.    At least one of the three bottles used by Dr. Emerson did not come from the defendant, because Dahlman testifies that he got only two from him and one of them was the brown flask.    The result of Dr. Emerson's analysis

should not have been received because it was made from liquor, some of which is not shown to have come from the defendant.    As it was used by the people in establishing the cause of death and the defendant's responsibility therefor, it was highly prejudicial to him.    For this reason the judgment of conviction must be reversed.

We have considered all questions presented by the record but find no other reversible error.

The judgment of conviction is reversed and a new trial granted.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.